1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    GLORIA JEANETTE DAVIS,                    Case No. 19-cv-05866-HSG

8                       Plaintiff,             **ORDER GRANTING MOTION FOR**
                                               **SUMMARY JUDGMENT**
9             v.
                                               Re: Dkt. No. 46
10   KAISER FOUNDATION HOSPITALS,

11                     Defendant.

12

13          Pending before the Court is Defendant Kaiser Foundation Hospital's motion for summary

14   judgment.  Dkt. No. 46.  The Court heard argument on the motion.  For the reasons detailed

15   below, the Court **GRANTS** the motion as to all of Plaintiff's claims.

16   **I.     BACKGROUND**

17          Plaintiff Gloria Jeanette Davis filed this employment discrimination action against

18   Defendant on September 20, 2019.  *See* Dkt. No. 1.  The parties appear to agree that Plaintiff

19   worked at Kaiser beginning in 2001, but was terminated in June 2019.  *Compare* Dkt. No. 49 at 2–

20   3, *with* Dkt. No. 46-2, Ex. 1 ("Davis Depo.") at 21:23–22:7, 24:5–8.  Plaintiff worked in various

21   positions during her time at Kaiser, including as a Certified Nurse's Assistant, Lift Technician,

22   and Patient Care Technician.  *See id.* at 22:23–24:8.  She was a Patient Care Technician in the

23   "Float Pool"—meaning she worked where needed in the hospital—at the time of her termination.

24   *See id.* at 23:16–24:8.  As a Patient Care Technician, Plaintiff performed various tasks helping

25   patients, including giving them baths, helping them walk, taking their vital signs, and

26   repositioning and feeding them.  *See id.* at 24:20–25:7.

27          The parties appear to agree that Defendant terminated Plaintiff's employment on June 3,

28   2019.  *See* Davis Depo. at 27:13–15, 114:14–115:10; *see also* Dkt. No. 46-3, Ex. 14 at 57–58; Dkt.

1  No. 49 at 3.  Defendant claims that Plaintiff was ultimately terminated for accessing patient health

2  information ("PHI") for a patient who was no longer in her care, in violation of The Health

3  Insurance Portability and Accountability Act of 1996 ("HIPAA") and Kaiser's internal Code of

4  Conduct.  *See* Dkt. No. 46 at 7–8; *see also* Dkt. No. 43-6, Ex. 14 at 57.  According to Plaintiff, she

5  was terminated based on a false allegation that she left a patient alone while on duty in March

6  2019.  *See* Dkt. No. 49 at 4–7.  Plaintiff states that a different patient care technician—also named

7  Gloria—was assigned to watch a patient, and that this other employee left the patient alone to go

8  to the bathroom.  *See id.* at 4.  The patient was later found unconscious.  *See id.*  Plaintiff

9  acknowledges that following the accusation, she looked at the patient's chart the next day to find

10 "a false statement from a doctor" that *Plaintiff* had left the patient.  Dkt. No. 49 at 4.  Plaintiff says

11 that she printed the chart and took it to an assistant manager, Melanie Yagaratnum, to explain what

12 had happened and get the chart corrected.  *See id.* at 4, 7.  Plaintiff states that Ms. Yagaratnum told

13 Plaintiff that this was a HIPAA violation, and threw the printed chart back at Plaintiff.  *See id.* at

14 4, 9.

15        In May 2019, Plaintiff met with Jonna-Lynn Taylor, the Float Pool Manager at Oakland

16 Hospital;[1] Ms. Yagaratnum; and Plaintiff's union steward regarding the incident.  *See id.* at 4; *see*

17 *also* Dkt. No. 46-7 ("Taylor Decl.") at ¶¶ 1, 3, 6, 8.  Plaintiff asserts that first, she was suspended

18 for three days "for the false allegation," and was "never given a chance to prove [her] innocence."

19 *See* Dkt. No. 49 at 4; *see also* Davis Depo. at 93:94:1, 96:18–97:10, 99:12–100:18.  During the

20 meeting, Ms. Taylor also explained that she was aware of—and would be investigating—the

21 potential HIPAA violation for accessing the patient's chart.  *See* Dkt. No. 49 at 4.  Plaintiff was

22 also put on administrative leave pending the investigation.  *See id.*  Plaintiff says that she told Ms.

23 Yagaratnum and Ms. Taylor that this was retaliation and harassment.  *See id.* at 10.

24        Plaintiff states that at the subsequent meeting, Millicent Brown Hunter, a compliance

25 officer, explained that Plaintiff had no business to go through the patient's chart.  *See id.*; *see also*

---

[1] Plaintiff appears to dispute that Ms. Taylor was her manager in the Float Pool.  *See* Dkt. No. 49 at 6–7.  However, Plaintiff appears to acknowledge that Ms. Taylor was in attendance at meetings regarding the alleged HIPAA violation and that she ultimately terminated Plaintiff's employment. *See id.* at 3–4, 6–8.

Dkt. No. 46-5 ("Brown Decl.") at ¶¶ 1, 6, 8–9. Plaintiff responded at the time that "if I did something wrong, I was sorry." Dkt. No. 49 at 4. According to Plaintiff, Ms. Brown Hunter simply responded, "no, you are not." *Id.* Plaintiff explains that during the meeting she "felt degraded" and that her possible termination "was a joke to them or some kind of game like they were enjoying what they were doing" to her. *See id.* at 4–5. She said it felt like she "was being interrogated." *See id.* at 7–8.

In her declaration, Ms. Taylor states that based on Ms. Hunter's conclusions that Plaintiff had inappropriately accessed and kept confidential patient medical records without a business need to do so, she decided to terminate Plaintiff. *See* Taylor Decl. at ¶¶ 8–9. The Notice of Termination letter, dated June 3, states in relevant part:

> After a fair and thorough investigation, it has been determined that you violated the company's HIPAA policies and Code of Conduct.
>
> . . .
>
> Because of the aforementioned findings and violations, your employment with Kaiser Foundation Hospitals is terminated effective today, June 3, 2019.

Dkt. No. 43-6, Ex. 14 at 57–58. Plaintiff states that she was unable to attend the meeting on June 3 regarding her termination because she had a court date, and did not receive her termination letter from her union steward until June 20, 2019. *See* Dkt. No. 49 at 5.

Plaintiff contends that she was a model employee and that there was no valid basis to terminate her. *See id.* at 3, 10. She further claims that she had "work related injuries with open workers compensation claims" at the time of her termination. *See id.* Plaintiff also describes a series of incidents in which she says she was intimidated, harassed, and mistreated during the course of her employment:

- In February 2018, Plaintiff contends that an unnamed registered nurse took out a patient's catheter and swung it across the bed, intentionally throwing contaminated urine in Plaintiff's face. *See id.* at 9.
- In September 2018, Plaintiff contends that another unnamed registered nurse left

1   contaminated suture scissors in a shampoo wash basin, then asked Plaintiff to

2   shampoo a patient using that basin.  Plaintiff states that her finger was injured and

3   infected as a result.  Plaintiff says she was denied the ability to go to the emergency

4   department, and had to take antibiotics for weeks because of the infection.  *Id.*

5   • From September 2018 to October 2018, Plaintiff states that she was sent home on

6   paid administrative leave, but was never told why, even when she asked.  *Id.* at 3.

7   However, Plaintiff elsewhere notes that she was sent home by Ms. Taylor in

8   September for 42 days for allegedly yelling at her union steward.  *See id.* at 6, 8;

9   *see also* Taylor Decl. at ¶ 5.  According to Ms. Taylor, the investigation found that

10   Plaintiff "had yelled, cursed and used offensive language when speaking with the

11   union steward," and had "created an offensive work environment."  *See* Taylor

12   Decl. at ¶ 5.  Plaintiff suggests that Ms. Taylor tampered with Plaintiff's personnel

13   file because "there were no reports or finding of wrongdoing."  *See* Dkt. No. 49 at

14   7–8.

15   • In April 2019, Plaintiff explains that she was assigned to sit with a patient on

16   suicide watch.  During a meeting with Ms. Yagaratnum, Ms. Taylor, and her union

17   steward, Plaintiff was told that she was being investigated for leaving the patient

18   alone.  *See* Dkt. No. 49 at 4; *see also* Taylor Decl. at ¶ 7.  Plaintiff does not appear

19   to deny this, but instead states that the patient's mother and uncle were present at

20   the patient's bedside at the time.  *See* Dkt. No. 49 at 4.  Plaintiff notes that she had

21   been accused of leaving a patient on suicide watch in March 2018 as well.  *See id.*

22   at 9; *see* Taylor Decl. at ¶ 7.

23   • Plaintiff states that Ms. Yagaratnum and her assistant Roslyn Lain harassed her by

24   "screaming and yelling" at her, and making "false allegations."  Dkt. No. 49 at 7.

25

26   In her first amended complaint, Plaintiff alleges the following causes of action:

27   (1) discrimination based on (a) "race" and "color," apparently under Title VII; (2) discrimination

28   based on "gender/sex," under Title VII of the Civil Rights Act of 1964; (3) discrimination based

on "age," under the Age Discrimination in Employment Act of 1967 ("ADEA");

(4) discrimination based on "disability or perceived disability" identified as "Central Nervous

System Disorder; Neck; Back et al," under the Americans with Disabilities Act of 1990 ("ADA");

(5) failure to accommodate disability, apparently under the ADA; (6) retaliation; and

(7) harassment. *See* Dkt. No. 23 ("FAC") at 3–4.

Defendant moves for summary judgment, arguing that Plaintiff has not proffered any

evidence that she was terminated for a discriminatory purpose. *See* Dkt. No. 46.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the

record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The

Court views the inferences reasonably drawn from the materials in the record in the light most

favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"

*Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*

*Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of

producing those portions of the pleadings, discovery, and affidavits that show the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the

moving party will not bear the burden of proof on an issue at trial, it "must either produce

evidence negating an essential element of the nonmoving party's claim or defense or show that the

nonmoving party does not have enough evidence of an essential element to carry its ultimate

burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

(9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must

also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at

325. In either case, the movant "may not require the nonmoving party to produce evidence

United States District Court
Northern District of California

supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III.    DISCUSSION

### A.    Discrimination

Plaintiff does not appear to argue that she has direct evidence that her termination from Kaiser was discriminatory. Direct evidence includes "conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the employer's decision." *Enlow v. Salem-Keizer Yellow Cab*, 389 F.3d 802, 812 (9th Cir. 2004) (emphasis omitted). It is evidence which, "if believed, proves the fact [of discriminatory animus] without inference or presumption." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F. 3d 1027, 1038 (9th Cir. 2005) (quotation omitted).

During her deposition, Plaintiff could not identify any manager who made a discriminatory or derogatory comment about her race, gender, age, or alleged disability. *See* Davis Depo. at 139:3–141:23, 143:16–143:17, 147:1–148:25, 151:20–25, 161:3–14, 164:1–10, 171:1–5. Rather, when asked whether she could identify any specific individuals Plaintiff said "I'm not going to name any names, that's correct." *Id.* at 161:3–14. She also acknowledged that no one told her that she was being disciplined or terminated because of her race, gender, age, or alleged disability. *Id.*

at 104:23–105:9, 126:7–25, 139:3–11, 147:10–13, 169:10–170:4.  Thus, Plaintiff must rely on circumstantial evidence of discrimination.

To establish a prima facie case of discrimination based on circumstantial evidence, Plaintiff must show:  (1) she was a member of a protected class; (2) she was qualified for the position sought or was competently performing the position held, or that he or she was capable of performing the essential functions of the job either with or without reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances suggesting a discriminatory motive.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see also Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (holding that *McDonnell Douglas* burden-shifting framework also applies to a motion for summary judgment on claims under the ADEA).[2] "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.*" Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000).  However, "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment."  *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988).

If a plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct."  *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  "If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination."  *Id.*

Here, Defendant appears to concede that Plaintiff is a member of a protected class and that her termination from Kaiser was an adverse employment action.  *See* Dkt. No. 46.  However, Defendant contends that Plaintiff has not shown that she was competently performing her position,

---

[2] Similarly, to establish a prima facie case of discrimination under the ADA, Plaintiff must show that she (1) is disabled; (2) is qualified for the position held; and (3) suffered an adverse employment action because of her disability.  *See Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001).

United States District Court
Northern District of California

United States District Court
Northern District of California

that similarly-situated individuals outside her protected class were treated more favorably, or that any other circumstances surrounding her termination give rise to an inference of discrimination. *Id.* The Court agrees.

As explained above, Plaintiff acknowledges that she accessed, printed, and retained PHI. *See* Dkt. No. 49 at 4, 7. She further acknowledges that she did not access this information for a patient of hers, but rather because she believed the patient's chart erroneously said Plaintiff left the patient alone. *Id.* Thus, she took the PHI for her own employment-related purposes. Although Plaintiff may believe that her desire to clarify who was responsible for leaving the patient alone justified taking the PHI, this was a violation of Kaiser's written Principles of Responsibility Code of Conduct ("POR"), and could have exposed Kaiser to liability under HIPAA. Kaiser's POR explains:

> Looking up medical records without a business need to know is against the law, so play it safe and don't look. Kaiser Permanente regularly checks electronic logs of what data has been accessed. Physicians, dentists and employees who have accessed medical records inappropriately have been identified and disciplined—some have even lost their jobs.
>
> If you access medical records inappropriately, both you and our organization could face government penalties and fines. Unauthorized access endangers the trust our members and patients have in Kaiser Permanente and our good standing in the community.

*See* Dkt. No. 46-3, Ex. 3 at 12. The POR explicitly states that failure to protect PHI may result in, among other things, "[d]isciplinary action" and "[t]ermination of employment." *See id.* During her deposition, Plaintiff acknowledged that she received annual trainings on the POR and the consequences for violating its provisions. *See* Davis Depo. at 34:19–36:14, 38:2–39:4. Even putting aside Plaintiff's other alleged disciplinary infractions, accessing PHI in violation of the POR and HIPAA was facially inconsistent with competent performance of her job duties. *Accord Markell v. Kaiser Found. Health Plan of Nw.*, No. CV. 08-752-PK, 2009 WL 3334897, at *9 (D. Or. Oct. 15, 2009), *aff'd sub nom. Markell v. Kaiser Found. Health Plan of the Nw.*, 405 F. App'x 116 (9th Cir. 2010) (finding employee could not establish prima facie case of discrimination

1    because his "conceded violation of the confidential records policy does constitute clear evidence

2    of conduct beyond the pale of Kaiser's expectations").

3            Plaintiff has also failed to provide any evidence that the decisionmakers at Kaiser who

4    terminated her acted with any discriminatory motive.  As noted above, Plaintiff declined to "name

5    any names," and in her deposition did not identify any manager who made a discriminatory or

6    derogatory comment about her race, gender, age, or alleged disability.  *See* Davis Depo. at 139:3–

7    141:23, 143:16–143:17, 147:1–148:25, 151:20–25, 161:3–14, 164:1–10, 171:1–5.

8            Instead, Plaintiff asserts that she "was taken for a man and used to do man related jobs,"

9    and "called [] man names" such as "book man" "because of [her] size" and strength.  *See* Davis

10   Depo. at 140:18–141:2, 143:19–144:3, 148:10–14; Dkt. No. 46-3, Ex. 21 at 108.  Plaintiff

11   suggests that "[a]ll the I.C.U. nurses" took advantage of her "strength of a man."  Davis Depo. at

12   141:3–23.  But Plaintiff does not identify any specific people who made comments about her sex

13   or gender.  *Id.* at 161:3–14.  Nor does Plaintiff explain how these remarks are related in any way to

14   her termination.

15           Plaintiff also states that there were "a few co-workers" who would say "[t]hey getting rid

16   of us older people, because you getting too old and they want someone that is younger."  *See*

17   Davis Depo. at 126:10–18.  These coworkers, however, were not involved in the decision-making

18   process to terminate Plaintiff.  *See id.* at 126:10–127:21.  Plaintiff was also unable to identify any

19   specific younger employees whom she trained or who were hired after her. *See id.* at 157:12-21.

20   In her interrogatory responses, Plaintiff asserts that she "trained an Asian guy" and "was

21   terminated right after that."  *See* Dkt. No. 46-3, Ex. 21 at 108.  But she does not provide any

22   information about his age or the position for which he was hired.

23           Plaintiff suggests that she was discriminated against based on an alleged disability, which

24   she identifies as "Central Nervous System Disorder; Neck; Back et al."  *See* FAC at 4.  In her

25   opposition brief, Plaintiff states that she was still suffering from "neck and back disability" at the

26   time of her termination.  *See* Dkt. No. 49 at 3.  But Plaintiff does not offer any evidence that the

27   decisionmakers involved in her termination were aware of her alleged disabilities.  During her

28   deposition, she acknowledged that she never spoke with Ms. Taylor or Ms. Hunter about her

United States District Court
Northern District of California

1   alleged disabilities.  *See* Davis Depo. at 177:19–178:19.  Again, there is no evidence in the record

2   before the Court that Plaintiff's alleged disabilities are related in any way to her termination.

3                                        *        *        *

4           The Court understands that Plaintiff does not believe she should have been terminated.

5   But based on the evidence presented, Plaintiff has failed to raise a material issue of fact connecting

6   her termination, or any adverse employment action taken against her, to race, sex, age, or

7   disability discrimination.

8           **B.     Retaliation**

9           To prove a prima facie case of discriminatory retaliation, Plaintiff must show: (1) that she

10  engaged in a protected activity; (2) she was subsequently subjected to an adverse employment

11  action; and (3) a causal link exists between the protected activity and the employer's action.  *See*

12  *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).  "The causal link can be inferred from

13  circumstantial evidence such as the employer's knowledge of the protected activities and the

14  proximity in time between the protected activity and the adverse action."  *Id.*

15          Here, Plaintiff explained in her interrogatory responses that she was retaliated against

16  because of a workers' compensation claim she filed when she was injured at work.  *See* Dkt. No.

17  46-3, Ex. 21 at 108.  During her deposition, however, Plaintiff explained that she filed this

18  workers' compensation claim in January 2016, more than three years before her termination.  *See*

19  Davis Depo. at 181:17–182:6.  Even assuming the filing of a workers' compensation claim is

20  protected activity, Plaintiff has not provided any evidence that the decisionmakers who terminated

21  her even knew of this claim at the time of her termination.  *See* Taylor Decl. at ¶ 10; Hunter Decl.

22  at ¶ 8.  In her opposition brief, Plaintiff also states that she told Ms. Yagaratnum and Ms. Taylor in

23  March 2019 that they were retaliating against Plaintiff.  *See* Dkt. No. 49 at 4.  But Plaintiff offers

24  no evidence or explanation of how she said they were retaliating against her.  There is simply no

25  basis for the Court to infer a causal link between the workers' compensation claim and her

26  termination.  Plaintiff has not met her burden to establish a prima facie case of unlawful

27  retaliation.

28  //

United States District Court
Northern District of California

10

**C.    Harassment**

To prevail on a hostile work environment claim under Title VII or the ADEA, Plaintiff must show:  (1) she was subjected to verbal or physical conduct based on her protected characteristics; (2)  the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.  *See Vasquez*, 349 F.3d at 642.

Plaintiff asserts that she was not allowed to use the restroom, was denied lunch breaks, and was denied permission to attend medical appointments.  *See* Dkt. N. 46-3, Ex. 21 at 109.  During her deposition, Plaintiff could not identify any specific instances in which she was prevented from attending doctors' appointments.  *See* Davis Depo. at 207:7–10, 281:4–282:21, 315:5–15.  She explained that "in the healthcare environment" it is "pretty hard to take your lunch on time."  *See id.* at 198:17–19.  She said one of the nurses would require Plaintiff to write her name on a board stating what time she would take her lunch, and when she left her coworkers would "wait[] in the hallway looking at their watch, letting [her] know that 'yeah, you better be back here on time.'"  *Id.* at 197:11–16.  Plaintiff also explained at times people would say she could not take her lunch break if she tried to take if after the time she was supposed to take it.  *See id.* at 198:17–23.  Plaintiff also described one instance in early 2018 where she allegedly came out of the bathroom to find a manager with her ear to the bathroom door.  *Id.* at 193:13–19.  Plaintiff said coworkers would frequently tell her patients needed something when she was in the restroom.  *See id.* at 193:20–25.  In her opposition brief, Plaintiff also asserts that in 2018 an unnamed nurse threw contaminated urine in her face and another left scissors in a wash basin she was using.  *See* Dkt. No. 49 at 9.

Even crediting these specific instances as true, Plaintiff has not provided any evidence from which a reasonable factfinder could conclude that any of this conduct was based on Plaintiff's protected characteristics.  Nor does this conduct appear sufficiently severe or frequent to rise to the level of a hostile work environment.  Plaintiff's generalized assertion that she was harassed all the time is simply not enough to raise a material issue of fact as to her harassment claim.

**D.      Failure to Accommodate**

Lastly, Plaintiff fails to offer any evidence in support of her failure to accommodate claim. There is simply no evidence before the Court that Plaintiff provided Defendant with a notice of need for accommodation that Defendant rejected or ignored.  *See Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001).  To the contrary, Plaintiff acknowledged that Defendant did accommodate her with light duty work or time off when she had restrictions that precluded her from performing the essential functions of her position.  *See* Davis Depo. at 234:3–25.  Again, there is no evidence in the record to raise a material issue of fact as to Plaintiff's failure to accommodate claim.

**IV.    CONCLUSON**

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment.  The Court **DENIES AS MOOT** Defendant's motion for leave to amend its answer.  Dkt. No. 44.  The Clerk is directed to enter judgment in favor of Defendant and to close the case.

**IT IS SO ORDERED.**

Dated:  2/2/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California